UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Chris A. Ramos

    v.                                                  Civil No. 15-cv-00261-JD

William Wrenn, New Hampshire Department
of Corrections Commissioner, et al.[1]

**REPORT AND RECOMMENDATION**

Before the court is the complaint (doc. no. 1) filed by New Hampshire State Prison ("NHSP") inmate Chris A. Ramos. The matter is here for preliminary review under 28 U.S.C. § 1915A and LR 4.3(d)(1).

**Standard**

For the purposes of this court's preliminary review of pro se pleadings under 28 U.S.C. § 1915A and LR 4.3(d)(1), the court construes the pleading liberally in determining whether the inmate has stated a claim. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Disregarding any legal conclusions, the court

---

[1] In addition to New Hampshire Department of Corrections ("NHDOC") Commissioner William Wrenn, plaintiff names Mental Health Management, Inc. ("MHM"), and the following current or former NHDOC officers and staff members as defendants, in both their individual and official capacities: Helen Hanks; New Hampshire State Prison Warden Richard Gerry; Heidi Guiani; Paula Mattis; Kim McKay; Chris Hatala; Dr. Potenza, whose first name is unknown; Judith Mann; and J. Ayers.

considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Background

In August 2012, Ramos was sentenced to two and one half to five years in prison for a sex offense.  Ramos asserts that the sentencing court specifically ordered that Ramos must complete the prison's sex offender treatment program before he could be paroled.  Ramos asserts that in December 2012, defendant Hatala evaluated Ramos's needs and risks for sex offender treatment.  Ramos alleges that Hatala said that Ramos was not a risk for recidivism, and that he would be wait-listed for the sex offender treatment program.  Hatala assured Ramos that there would be plenty of time for Ramos to complete the sex offender treatment program before his minimum parole date.

As Ramos's minimum parole date in November 2014 neared, Ramos submitted multiple inmate request slips to defendants requesting admission to the program.  Ramos received no response to most of those requests.  Ramos alleges that his case manager, defendant Ayers, recommended that Ramos reschedule his initial

parole hearing because of the delay in Ramos's admission to the program.  Less than a month before Ramos's minimum parole date, Ramos was moved to the "program pod," but as Ramos had already rescheduled his initial parole hearing, Ramos believes that he had already lost the opportunity for parole before his sentence maximum date.  Ramos asserts claims of violations of his rights under the Fourteenth Amendment Due Process Clause and the Eighth Amendment Cruel and Unusual Punishment Clause, relating to these incidents and the impact on his mental health and emotional well-being, resulting from the delayed admission to the sex offender treatment program, the lost opportunity for parole, and the lack of responses to his inmate request slips.

## Discussion

### I. Due Process

Due process requirements apply only to the deprivation of interests in life, liberty, or property.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (procedural due process); Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (executive action does "not infringe substantive due process unless it also deprives an individual of a 'protected interest in life, liberty, or property'" (citation omitted)).  A convicted person has no constitutional right to or liberty

interest in conditional release from incarceration, on parole or otherwise, "'before the expiration of [his] valid sentence.'" See González-Fuentes, 607 F.3d at 886 (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). A right to parole under the Fourteenth Amendment Due Process Clause exists only if state law creates that right. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Hamm v. Latessa, 72 F.3d 947, 954-55 (1st Cir. 1995). New Hampshire has not created a liberty interest in the opportunity for parole. See Dupont v. N.H. Adult Parole Bd., No. 11-cv-156-SM, 2011 U.S. Dist. LEXIS 150902, at *10, 2011 WL 6934778 (D.N.H. Dec. 19, 2011), report and recommendation approved by No. 11-cv-156-SM, 2012 U.S. Dist. LEXIS 15085, at *1, 2012 WL 405505 (D.N.H. Feb. 8, 2012). Ramos's loss of an opportunity for conditional release before his sentence maximum date, because of a delay in admitting him to the sex offender treatment program, does not implicate the Due Process Clause.

    Ramos asserts that the sentencing judge's order conditioning his parole eligibility on his completion of the sex offender treatment program puts Ramos is a different position than other inmates with respect to his due process rights. Ramos further asserts that the delay in admitting him to the sex

4

offender treatment violated NHSP policies, specifically, NHSP Policy and Procedure Directive ("PPD") 6.35.

Inmates have no federal constitutional right to participate in rehabilitative programs while incarcerated, Fiallo v. De Batista, 666 F.2d 729, 730 (1st Cir. 1981), and, accordingly, a delay in providing such programming that could result in a lost opportunity for parole does not implicate the Due Process Clause where the inmate is not otherwise entitled to receive such programming.  Nothing in the terms of Ramos's sentence, state law, or PPD 6.35 grants Ramos a right or protected liberty interest in being admitted to sex offender treatment on or before a certain date, or in having the opportunity to fulfill all preconditions to parole eligibility prior to a certain date. Accordingly, Ramos's due process claims should be dismissed.

## II.  Eighth Amendment

Ramos asserts that health care providers contracting with the NHSP to provide mental health services did not adhere to professional standards in neglecting Ramos's inmate request slips and in delaying his access to sex offender treatment, and that defendants subjected him to mental distress and emotional harm by preventing his timely access to the sex offender treatment program, in violation of his rights under the Eighth

Amendment.  To assert an Eighth Amendment claim in these circumstances, plaintiff must establish that the deprivation was, objectively, "sufficiently serious," and must also show that, "[s]ubjectively, . . . prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety."  Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (internal quotation marks and citations omitted).  Cf. Penn v. Escorsio, 764 F.3d 102, 110 (1st Cir. 2014) (to demonstrate deliberate indifference plaintiff must show (1) grave risk of harm, (2) defendant's knowledge of that risk, and (3) defendant's failure to take easily available measures to address risk), cert. dismissed, 135 S. Ct. 1732 (2015).

    Stripped of legal conclusions about "deliberate indifference," the complaint fails to state a claim for a violation of the Eighth Amendment with respect to the incidents described in the complaint.  Ramos has not alleged facts to state a claim that any defendant knew that there was a grave risk of harm to Ramos in not answering his inmate request slips, in not expediting his admission to the sex offender treatment program, or in delaying his opportunity for parole by recommending that his initial parole hearing be rescheduled.

Accordingly, Ramos has failed to allege that any defendant acted with deliberate indifference as to those matters, and his Eighth Amendment claims should be dismissed.

## Conclusion

For the foregoing reasons, the district judge should dismiss the complaint for failure to state a claim upon which relief can be granted. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the District Court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 6, 2015

cc: Chris A. Ramos, pro se